# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

LINDSAY HAYS, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED

**CIVIL ACTION**

**VERSUS**

**NO. 17-88-JWD-RLB**

EATON GROUP ATTORNEYS, LLC,
AND MIDLAND FUNDING, LLC

## RULING AND ORDER ON JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court is the motion (Doc. 21) by Plaintiff Lindsay Hays ("Plaintiff"), individually and as a representative of the class of persons defined below in Paragraph 3(a) of the proposed class settlement agreement (Doc. 21-3 at 1-2) ("Class"), and Eaton Group Attorneys, LLC, ("Defendant") (collectively, the "Parties") to (i) enter an order which preliminarily approves the Class Settlement Agreement ("Agreement") (Doc. 21-3), attached as Exhibit 1 to the Declaration of Samuel J. Ford (Doc. 21-2) (the "Declaration"); (ii) set dates for Class members to opt out, object, or return a claim form; (iii) schedule a hearing for final approval of the Agreement; (iv) approve the mailing of the notice to the Class in the form of Exhibit 2 to the Declaration (the "Notice") (Doc. 21-4.); and (v) find that the mailing of such Notice satisfies both statutory requirements and due process. For the reasons which follow, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

### THE PLEADINGS

Plaintiff alleges in her pleadings that Defendant committed Fair Debt Collection Practices Act ("FDCPA") violations by: (1) making false, deceptive, and misleading representations in connection to the collection of a debt and (2) using unfair and unconscionable means to collect or attempt to collect a

debt.

Plaintiff seeks to certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and proposes to act as representative of a state-wide class consisting of Louisiana consumers who, within one year prior to the filing of this action, "received a collection letter from Defendant offering to discuss a voluntary repayment plan in connection to a signed consent judgment and/or the disclosure of personal, financial, employment, and/or income information." (Doc. 21-3 at 1–2.)

Specifically, Plaintiff alleges that on or about May 31, 2016, Defendant mailed a collection letter (the "Letter") to Plaintiff. Defendant attached to the Letter a drafted consent judgment for a lawsuit captioned *Midland Funding LLC versus Lindsay Hays*, No. 468028-17, Ascension Parish Court, Parish of Ascension, State of Louisiana (the "Suit"). The consent judgment attached to the Letter was signed by Defendant and only needed Plaintiff's signature to be filed as a judgment against Plaintiff for the full amount of the alleged debt and all costs of the Suit. In signing the consent judgment, Plaintiff would also waive citation, service, petition, and all delays.

The Letter also contained a requested information section entitled "PLEASE COMPLETE & RETURN," requesting the following information from Plaintiff:

a. Name;

b. Social Security number;

c. Address;

d. Phone number;

e. Employer;

f. Employer phone number;

g. Employer address;

h. Date of hire;

i. Gross weekly wage;

j.    Spouse name;

k.    Spouse Social Security number;

l.    Spouse employer;

m.    Spouse employer phone number;

n.    Spouse employer address;

o.    Spouse date of hire;

p.    Spouse gross weekly wage.

After the requested information section, the Letter contained signature lines for Plaintiff and a spouse under the statement "AUTHORITY GRANTED THIRD PARTIES TO VERIFY/CORRECT."

The only portion of the Letter actually addressing Plaintiff was an introductory paragraph at the top of the Letter, stating "[i]f you would like to explore a voluntary repayment plan then please provide the requested information. The debt will need to be acknowledged through the attached consent judgment. Please return these forms as soon as possible. This is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."

Plaintiff alleges Defendant sent letters with identical or substantially identical language to hundreds of Louisiana consumers. Plaintiff alleges the Letter is false, deceptive, and misleading because an unsuspecting debtor, seeking only to explore a voluntary repayment plan, could be fooled into executing the consent judgment or providing personal income information without knowledge of the consequences.

## THE PARTIES' SETTLEMENT

The Parties represent that they began to engage in settlement negotiations after Plaintiff filed this action. The parties represent that these discussions were contentious, and each term of the settlement was hard fought. The Defendants and Class counsel ultimately reached an agreement on all terms, which they memorialized in the Class Settlement Agreement (Doc. 21-3). Defendant denies violating

the FDCPA and denies all liability to Plaintiff and the Settlement Class. However, Defendant now desires to settle the claims solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims that have been or could have been asserted by Plaintiff and the Settlement Class against Defendant in this Lawsuit.

## INFORMATION EXCHANGE

Plaintiff's counsel represent that they have thoroughly investigated the underlying claims and gathered significant factual information through interrogatories, requests for the production of documents, requests for admission, and a deposition of Defendant's Certified Public Accountant.

## SUMMARY OF THE SETTLEMENT TERMS

Counsel for the Parties represent that they have analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the Lawsuit to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon counsels' review and analysis, the Parties have entered into the Agreement to settle and compromise this Lawsuit on the terms and conditions embodied in the Agreement and agree as follows:

    *a.*    Settlement Class. All persons in the State of Louisiana who received a collection letter from Defendant offering to discuss a voluntary repayment plan in connection to a signed consent judgment and/or the disclosure of personal, financial, employment, and/or income information between February 15, 2016 and February 15, 2017. There are approximately 1051 persons that fall within this class.

    *b.*    Relief to Plaintiff. Defendant through its insurer, agrees to pay $2,500.00 to Plaintiff for her damages and her service as the Class Representative.

    *c.*    Relief to Settlement Class. Defendant, through its insurer will create a class settlement fund of $7,000.00 ("Class Recovery"), which will distribute *pro rata* among Class members who do not exclude themselves and who timely return a valid claim form ("Class Claimants"). The term *pro rata* shall mean a distribution percentage based upon

the $7,000.00 Class Recovery divided by the total amount of claims submitted by persons who do not exclude themselves and who timely submit a claim form. Class Claimants will receive a *pro rata* share of the Class Recovery by check. Checks issued to Class Claimants shall be void after 60 days from the date of issuance. On or after 90 days following issuance of the last Class Claimants' checks, any uncashed checks or undistributed funds will be paid back to Defendant's insurer to offset its cost associated with sending class notice.

*d.*     Attorneys' Fees and Costs. Counsel for Plaintiff and the Class shall petition the Court for approval of an award of fees in the amount of $22,500.00. Pending the Court's approval, Defendant's insurer shall pay counsel for Plaintiff and the Class that amount which the Court deems reasonable, not to exceed $22,500.00, as attorneys' fees. Defendant's insurer shall also pay all costs incurred by counsel for Plaintiff and all costs related to class notice and administration;

*e.*     Class Notice. Within fourteen (14) days of entry of the Preliminary Approval Order, Defendant shall cause actual notice, in the form of Exhibit 2 to the Declaration, to be sent to the last known addresses of the Settlement Class members, according to Defendant's records. Defendant shall distribute the notice via any form of U.S. Mail providing address forwarding. Each notice shall be sent with a request for forwarding addresses. In the event that a notice is returned as undeliverable and a forwarding address is provided, Defendant shall cause to be forwarded any such returned notice to the address provided within seven days of receipt. Defendant is not required to skip trace any letters that are returned as undeliverable. If final approval is granted, Defendant shall retain all documents and records generated during its administration of the settlement, including records of notice given to the Settlement Class, records of undelivered mail, claim forms and payments to Class Claimants for a period of at least six months following the issuance of an order dismissing this Lawsuit with prejudice and the expiration of all deadlines for appeal from such order.

*f.*     Class Members' Right to Opt Out. Any Class Member who properly files a timely written request for exclusion from the Class shall be excluded from the Class and shall have no rights as a Class Member pursuant to the Agreement. A request for exclusion must be in writing and state information, including the name, address, and phone number of the person(s) or entity seeking exclusion. The request must be mailed to Defendant's Counsel at the address provided in the Class Notice and received by such date as set by the Court. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the Class Notice, or that is not received within the time specified shall be invalid and the person(s) serving such request shall remain a Class Member and shall be bound as a Class Member by the Settlement, if approved. Defendant has an obligation to forward any objections or requests for exclusions received to Class Counsel within five (5) days of receipt.

(Doc. 21-3.)

## CLASS CERTIFICATION LEGAL STANDARD AND APPLICATION

Rule 23 of the Federal Rules of Civil Procedure governs the conditional or preliminary certification sought by the Parties. The recent amendment to Rule 23(e) makes clear that its procedural safeguards apply to a "class proposed to be certified for purposes of settlement" and requires the Court to conclude that it will likely be able, after final hearing, to certify the class. Fed. R. Civ. P. 23(e). As the 2018 Advisory Committee Note to Rule 23(e)(2) explains:

> The decision to give notice of a proposed settlement . . . should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object. . . . The amended rule also specifies that the standard the court should use in deciding whether to send notice—that it will likely be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal.

The 2018 Advisory Committee Note to Rule 23(e)(1) reiterates the same message in a different way, stating that "[t]he court should not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

The 2018 Advisory Committee Note to Rule 23(e)(2) also makes clear that, "in addition to evaluating the proposal itself, the court must determine whether it can certify the class under the standards of Rule 23(a) and (b) for purposes of judgment based on the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

Under Rule 23(a), the party seeking certification bears the burden of establishing four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v.*

*Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir 2001)). The certification requirements of Rule 23 generally apply when certification is for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment.

Solely for the purposes of this motion and to effectuate the proposed settlement, Defendant does not dispute that the Settlement Class should be certified.[1]

Rule 23(a)(1) – Numerosity: Rule 23(a) requires that the class be so large that joinder of all members is impracticable. To satisfy this requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir 2000) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).

Based upon information received from Defendant, Class members have been specifically identified and the size of the Settlement Class exceeds one thousand, which is sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that class of 100 to 150 satisfies numerosity requirement and noting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable").

Rule 23(a)(2) – Commonality: Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of class wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Even where individual class members may not be identically situated, commonality exists where a question of law linking class members is substantially related to the resolution of the litigation. *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 839–40 (5th Cir. 2012). "[E]ven a single [common] question will do[.]" *Dukes*, 131 S. Ct. at 2556 (citation omitted).

---

[1] Doc. 21-1 at 15. See also, 21-3 at 7. The 2018 Advisory Committee Note to Rule 23(e)(1) states: "If the settlement is not approved, the parties' positions regarding certification for settlement should not be considered if certification is later sought for purposes of litigation."

The Court finds that there are common questions of law or fact affecting the Class, and these questions include, but are not limited to: (a) whether Defendant's form collection letter, sent to all Class members, violated the FDCPA; (b) whether Plaintiff and the other Class members are entitled to recover damages and, (c) if so, in what amount.

Rule 23(a)(3) – Typicality: "The test for typicality is not demanding, and it focuses on the general similarity of the legal and remedial theories behind plaintiff['s] claims." *In re Pool Prods. Dist. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 310 (E.D. La. 2015) (citing *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)). The typicality requirement may be met if the representative's claim arises from the same events or practices or course of conduct that gives rise to the claims of other class members, and the named plaintiff's claims are based on the same legal theory. *In re Pool Prods.*, 310 F.R.D. at 310; *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. 11-2777, 2013 WL 6072702, at *7 (E.D. La. Nov. 18, 2013).

"[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." 7A Wright & Miller, Federal Practice and Procedure, Section 1764 (2017). As long as the claims of the named plaintiffs are consistent with those of the class, the claims need not be identical. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 911 (E.D. La. 2012).

For FDCPA cases concerning form letters, typicality is met where the named plaintiff receives a letter containing the same alleged defects as those sent to the class. *See Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, No. 12-2043, 2014 WL 7330602, at *9 (E.D. La. Dec. 18, 2014) (finding typicality met where named plaintiff received a letter containing language which was the crux of the class-wide claims); *see also Cope v. Duggins*, No. 98-3599, 2000 WL 381928, at *3 (E.D. La. Apr. 13, 2000) (finding typicality met where allegations state that every class member received a letter from

defendants that violated FDCPA).

The Court finds that the typicality requirement is satisfied here because Plaintiff and the Class all received collection letters from Defendant with the same alleged defects. Plaintiff's factual claims, legal theories, and remedies are identical to those of the class.

Rule 23(a)(4) – Adequacy of Representation: Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625–26 (citations and internal quotation marks omitted). This is to ensure that the named plaintiffs are aligned with class members such that the representatives have an incentive to pursue and protect the claims of the absent class members. *Amchem Prods.*, 521 U.S. at 626 n.20. This requirement also addresses potential conflicts of interest between named parties and the class they represent, *Id.* at 625, as well as "competency and conflicts of class counsel." *Id.* at 626 n.20.

Adequacy of representation consists of two prongs: the adequacy of counsel to handle a class action and the adequacy of the named plaintiff to protect the differing interests of the class members. *Reyes*, 2014 WL 7330602, at *9. "When evaluating the adequacy of the class representative, the inquiry focuses on conflicts of interest between named parties and the class they seek to represent." *Id.* (citing *Amchem Prods.*, 521 U.S. at 625–26).

Plaintiff asserts that she will fairly and adequately represent the interests of the Class and that she has no interests adverse to other members of the Settlement Class. As the Supreme Court stated in *Amchem Products*, she is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem Prods.*, 521 U.S. at 594–95.

Further, as discussed earlier, Plaintiff has hired counsel who have substantial experience in the handling of both consumer protection litigation and class actions. Plaintiff's counsel successfully defended a motion for summary judgment regarding the exact claim at issue in this litigation. *Brandon v. Eaton Grp. Attorneys, LLC*, No. 16-13747, 2017 WL 345864 (E.D. La. Jan. 24, 2017).

Further, Plaintiff's counsel have been enrolled in several other class actions in the past two years. (Doc. 21-2, ¶ 8; *see also* Doc. 28-1). Lastly, Plaintiff's lead counsel, Samuel Ford, participated in the defense of many consumer class action cases as an associate attorney with Sessions, Fishman, Nathan & Israel. (Doc. 21-2, ¶ 9; *see also* Doc. 28-1). The Court has also reviewed the affidavits of Galen M. Hair (Doc. 28-4) and David P. Vicknair (Doc. 28-5) and concludes that they, too, are experienced in the field of consumer litigation. Thus, Class counsel have substantial experience litigating class action lawsuits as both class and defense counsel.[2]

Plaintiff also points to the settlement in demonstrating her and her counsel's adequacy. *See Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (reasoning "[i]t will follow generally that an attorney who secures and submits a fair and adequate settlement has represented the client class fairly and adequately"). The settlement obtained by Plaintiff and Class counsel is favorable to the Class. It provides a Class recovery that is likely more than the maximum recovery permissible under the FDCPA. The maximum liability for a defendant in a class action is the lesser of $500,000 or 1% of its net worth. 15 U.S.C. § 1692k(a)(2)(B). The settlement creates a class settlement fund of $7,000.00, which is more than 1% of Defendant's net worth, the maximum recovery allowable. (Doc. 21-2, ¶ 7; *see also* Doc. 27); *see Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018). The Court finds there is adequacy of representation.

Rule 23(b)(3) – Predominance: "To predominate, common issues must form a significant part of individual cases." *In re Vioxx Prods Litig.*, 239 F.R.D. 450, 460 (E.D. La. 2006) (citing *Mullen*, 186 F.3d at 626). The purpose of this requirement is to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also Unger*, 401 F.3d at 320. To determine whether common issues predominate, "the court must 'identify the substantive issues

---

[2] At the Court's request, Plaintiff filed a Supplemental Brief in Support of Joint Motion for Preliminary Approval of Class Action Settlement. (Doc. 28.) Within it and attached to it is additional information regarding the experience of Plaintiff's counsel and the fee being requested.

that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class.'" *In re Pool Prods.*, 310 F.R.D at 311 (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)).   Here, for reasons already set out, common issues predominate.

Rule 23(b)(3) – Superiority: Rule 23(b)(3)'s requirement that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy is obviously related to the predominance requirement. *Steering Comm. v Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006). The main policy which it serves is to "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods.*, 521 U.S. at 617 (citation omitted). As Judge Posner so aptly stated, "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v Household Int'l, Inc*. 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original).

The FDCPA limits a defendant's liability in a class action to statutory damages not exceeding the lesser of $500,000 or one percent of the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B). Defendant's Certified Public Account, Faulk & Winkler, LLC, prepared a Financial Report for Eaton Group Attorneys, LLC (the "Financial Report"), which shows Defendant's net worth. (Doc. 21-2, ¶ 7 and 27). Plaintiff's counsel deposed Tommy Lejeune, managing partner of Faulk & Winkler, LLC regarding the details of the Financial Report.[3] Plaintiff's counsel also obtained additional documents Faulk & Winkler, LLC used in creating the financial report, and thoroughly reviewed them. Based upon the financial

---

[3] Because the Parties' original motion did not provide supporting documentation for its representation regarding the Defendant's net worth, the Court required supplementation of the submission. (Doc. 24.); *see Tourgeman v. Nelson and Kennard*, 900 F.3d 1105, 1109-10 (9th Cir. 2018) (holding that plaintiff bears the burden of proving defendant's net worth in a FDCPA suit).  That was provided. (Doc. 27.)

information provided to the Court and the statutory limits on recovery, the potential recovery for each plaintiff is so little that, realistically, it is likely that few, if any, claimants would choose to pursue an individual action.

The settlement in this case divides pro-rata the total sum of $7,000.00 among a class of over 1,000 persons. (Doc. 21-3 at 5.) This kind of case is described as a "negative value" suit—where the possible recovery is less than the cost of bringing the suit. *Castano v. Am. Tobacco Co*., 84 F.3d 734, 748 (5th Cir. 1996) ("The most compelling rationale for finding superiority in a class action" is "the existence of a negative value suit"). Here, the Court has no doubt that this part of the Rule 23(b)(3) is satisfied. *See, e.g.*, *Bonett v. Education Services, Inc.*, No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) (approving class action settlement of $22,000, netting approximately $77.46 for each class member).

A class action is superior to other available methods for the fair and efficient adjudication of the controversy in this case because a class action resolution of the issues described above outweighs the difficulties in management of the class and allows access to the courts for those who might not gain such access standing alone. *Castano*, 84 F.3d at 740.

In addition, the Court finds that the causes of action forming the basis of the class claims in this case are such that the prosecution of separate actions by individual members of the class would create the risk of establishing incompatible standards of conduct for Defendant. Due to that, and the efficiencies of proceeding in a single case to resolve over 1,000 identical claims, class treatment is far superior to other forms of resolution.

Rule 23(g) – Class Counsel: To complete certification of a settlement class, the Court must appoint class counsel. Fed. R. Civ. P. 23(g). The Court has carefully reviewed the qualifications of Samuel John Ford (Docs. 21-2 and 28-1), and, for the reasons previously given, finds that he is well qualified to act as Class counsel.

## PRELIMINARY FAIRNESS DETERMINATION
## LEGAL STANDARD AND APPLICATION

A district court must approve the dismissal or compromise of a class action. Fed. R. Civ. P. 23(e); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *In re Pool Prods.*, 310 F.R.D. at 314. The approval process is meant to "ensure that the settlement is in the interest of the class, does not fairly impinge on the rights and interest of dissenters, and does not merely mantle oppression." *In re Pool Prods.*, 310 F.R.D. at 314 (quoting *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983), in turn quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978)).

Although both parties desire settlement, this Court is not at liberty to merely rubberstamp approval. Rather, district judges must independently evaluate the settlement for fairness and, in so doing, must "exercise the highest degree of vigilance in scrutinizing [the] proposed settlement." *In re Pool Prods.*, 310 F.R.D. at 314 (quoting *Reynolds v. Nat'l Bank*, 288 F.3d 277, 279–80 (7th Cir. 2002); *see also Manual for Complex Litigation* (Fourth) Section 21.61 (2004).

However, "[t]he public interest strongly favors the voluntary settlement of class actions." *In re Oil Spill*, 910 F. Supp. 2d at 930 (citing, *inter alia*, *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981)). "Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable and adequate." *Id.* at 930–31 (citing, *inter alia*, *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008)).

Where, as here, the motion is for preliminary, and not final, approval, the standards are less stringent. *In re Pool Prods.*, 310 F.R.D. at 314 (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)); *Manual*, *supra*, Section 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious

deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.,* 310 F.R.D. at 314–15 (citations omitted).

Nonetheless, the 2018 amendment to Rule 23(e) makes clear that direct notice of a proposed class settlement should go to class members who would be bound by the proposal only "if giving notice is justified by the parties' showing that the court will *likely* be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of the judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

"In determining the fairness, adequacy and reasonableness of the proposed compromise, the inquiry should focus upon the terms of the settlement." *Cotton*, 559 F.2d at 1330.

Rule 23(e)(2) was amended in 2018 to provide:

If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The 2018 Advisory Committee Note to 23(e)(2) suggests that these factors are not intended to be exclusive:

Courts have generated lists of factors to shed light on this concern [of ensuring that the settlement is fair, reasonable, and adequate]. Overall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. *The goal of this amendment is not to displace any factor*, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (emphasis added).

In the Fifth Circuit, fairness, adequacy and reasonableness are typically measured by the six so-called "*Reed* factors": (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker*, 667 F.2d at 1209); *see also Vedol Leading Health Care of La., Inc.*, 15-cv-2665, 2017 WL 4250060, at *2 (W.D. La. Sept. 7, 2017); *In re Oil Spill*, 910 F. Supp. 2d at 931.

There is, not surprisingly, overlap between the 2018 amendment's fairness, reasonableness and adequacy considerations and those set out in the Fifth Circuit test. This Court will therefore combine the two in its review and analysis.

## THE CLASS REPRESENTATIVE AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS

As set out earlier in this ruling, the Court is satisfied that both the Class representative and Class counsel have adequately and diligently represented the Class. The Court has carefully reviewed the terms of the proposed settlement and the proposed settlement seems fair in all respects. It was negotiated by experienced, informed counsel. Plaintiff is represented by a law firm with substantial experience in litigating complex class actions and is familiar with the factual and legal issues of the case. The Defendant is similarly represented by experienced and able counsel who is familiar with the factual

15

and legal issues of the case.

## THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH
## (THE SETTLEMENT WAS NOT A PRODUCT OF FRAUD OR COLLUSION)

The Court accepts counsels' representations that negotiations were rigorous, hard-fought, and were conducted at arm's length. The Parties discussed settlement for over a year and engaged in extensive discovery so that Class counsel could evaluate the maximum class recovery possible. The Parties were eventually able to reach an agreement, as laid out in the Class Settlement Agreement. (*See* Doc. 21-3). There is no evidence of fraud or collusion.

## RELIEF ADEQUATE GIVEN COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL
## (THE COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff is avoiding expense and delay and ensuring recovery for the Class. Even where the claims are not particularly complex, approval of settlement is favored where settling "avoids the risks and burdens of potentially protracted litigation." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006).

This case is no exception. A trial would be lengthy, burdensome, and would consume tremendous time and resources of the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary and injunctive relief available to Class members in a prompt and efficient manner.

The amount of the settlement equals or exceeds the maximum recovery under the limited damages available under the statute sued upon.

## THE FACTUAL AND LEGAL OBSTACLES TO
## PREVAILING ON THE MERITS

Although Plaintiff believes her case is strong, it is subject to risk. Litigation is inherently risky and full of impediments, even where a defendant "all but admitted" and "the plaintiffs had a strong

chance of proving" liability. *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d at 620–21.

"A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172; *Cotton*, 559 F.2d at 1330. A trial on the merits would involve risks for Plaintiff as to both liability and damages. While Plaintiff believes she could ultimately establish liability, it is very unlikely the Class could obtain the recovery it obtained through settlement. Further, this would require the time and resources required to litigate dispositive motions and prevail at trial, and then prevail again on the inevitable appeals of class certification, liability, and damages. Litigation to judgment further creates the risk that any judgment against the Defendant will not be collectible.

Class counsel are experienced, realistic, and understand that the resolution of liability issues, the outcome of the trial, and the likely appeals process, are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor thus weighs in favor of approval.

### THE STAGE OF THE PROCEEDINGS AND THE AMOUNT OF DISCOVERY COMPLETED

"This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7- 12 Litig.*, 447 F. Supp. 2d at 620 (quoting *Ayers*, 358 F.3d at 369). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on

counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621 (citing *In re Corrugated Container*, 643 F.2d at 211).

The Parties' discovery here meets this standard. The precise issue in this action has already been litigated on a single-plaintiff basis, with the same counsel appearing for the plaintiff and defendant. *Brandon v. Eaton Grp. Attorneys, LLC*, 2017 WL 345864 (E.D. La. 2017). Thus, the main issues in this class action were class liability and damages—the latter concerning Defendant's net worth. The Parties engaged in multiple rounds of discovery and a deposition to fully develop these issues. Class counsel have reviewed hundreds of pages of documents and carefully questioned Defendant's Certified Public Accountant to reach the best position to analyze the benefits of class settlement. The discovery, litigation history, negotiations, and settlement itself all favor settlement at this stage in the litigation.

## THE POSSIBLE RANGE OF RECOVERY AND THE CERTAINTY OF DAMAGES

When reviewing a class settlement, the court must analyze the recovery within the possible range of recovery. *Parker*, 667 F.2d at 1209. "In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d at 622.

That the settlement amount represents something less than the total potential recovery does not, of course, warrant withholding approval. Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972), *aff'd in part*, *rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park"); *McNeal v. Valderamma*, 2015 U.S. Dist. LEXIS 49830, at *17 (C.D. Cal. 2015) (approving a settlement of $75,000 when potential damages were $1.2 million, or about 6%); *In re Toys R US FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving settlement with *vouchers* (not

cash) potentially worth a maximum of three percent (3%) *if all possible claims were actually made*, or $391.5 million aggregate voucher potential where the class could have recovered $13.05 billion); *In re Pool Prods.*, 310 F.R.D. at 316 (approving a $600,000 settlement when the potential recovery was $23,951,893).

As stated earlier, the FDCPA limits a defendant's liability in a class action to statutory damages not exceeding the lesser of $500,000 or one percent of the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B). Through extensive efforts, Class Counsel was able to achieve a class recovery of $7,000.00, which is *more* than 1% of Defendant's net worth. (Doc. 21-2, ¶ 7; Doc. 27.) This amount represents substantial value given the Defendant's limited financial condition and the attendant risks of litigation. Although the individual recovery is small (estimated between $6.66 to $66.66 per claimant depending on the number of class members who choose to participate, *see* Doc. 21-4 at 2), the Class recovery could only be higher if Plaintiff were able to convince the Court that Defendant's net worth is substantially higher than the number provided by Defendant's accountant. Thus, considering a greater class recovery would be an exercise in considering recoveries that are beyond the range of the most minimal probability, as discussed in *In re Educ. Testing*, this amount is fair. *Bonett*, 2003 WL 21658267, at *7.

### THE RESPECTIVE OPINIONS OF THE PARTICIPANTS, INCLUDING CLASS COUNSEL, CLASS REPRESENTATIVE, AND THE ABSENT CLASS MEMBERS

Class counsel and the Class representative strongly believe this settlement is fair and beneficial to all parties involved. (Doc. 21-1 at 20.) Notice of the settlement and its details have not yet been issued to the class. The Court will more fully analyze this factor after Class members are given the opportunity to opt out or object.

## THE EFFECTIVENESS OF ANY OF THE PROPOSED METHODS OF DISTRIBUTING RELIEF TO THE CLASS, INCLUDING THE METHOD OF PROCESSING CLASS-MEMBER CLAIMS, IF REQUIRED

The Agreement (Doc. 21-1 at 9) provides the following:

> <u>Relief to Settlement Class</u>. Defendant, through its insurer will create a class settlement fund of $7,000.00 ("Class Recovery"), which will distribute *pro rata* among Class members who do not exclude themselves and who timely return a valid claim form ("Class Claimants"). The term *pro rata* shall mean a distribution percentage based upon the $7,000.00 Class Recovery divided by the total amount of claims submitted by persons who do not exclude themselves and who timely submit a claim form. Class Claimants will receive a *pro rata* share of the Class Recovery by check. Checks issued to Class Claimants shall be void after 60 days from the date of issuance. On or after 90 days following issuance of the last Class Claimants' checks, any uncashed checks or undistributed funds will be paid back to Defendant's insurer to offset its cost associated with sending class notice.

While the method of mailing is unclear, the Court finds for purposes of preliminary approval, subject to review, clarification and modification prior to final approval, if necessary, that the proposed method is satisfactory and this factor is satisfied.

## AGREEMENT(S) IDENTIFIED BY THE PARTIES

The December 2018 amendment to Rule 23 requires "[t]he parties seeking approval [to] file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Rule 23(e)(2)(C)(iii) mandates that the Court "take into account" "any agreement required to be identified under Rule 23(e)(3)." Here the only agreement identified by the Parties is the Settlement Agreement under consideration, and the Parties have identified no other "side" agreements.

## THE TERMS OF PROPOSED AWARD OF ATTORNEY FEES, INCLUDING TIMING OF PAYMENT, IS FAIR AND REASONABLE

An attorney's fee of $22,500 was negotiated as a part of the settlement. The settlement agreement also provides:

> Pending the Court's approval, Defendant's insurer shall pay counsel for Plaintiff and the Class that amount which the Court deems reasonable, not to exceed $22,500.00, as

> attorneys' fees. Defendant's insurer shall also pay all costs incurred by counsel for
> Plaintiff and all costs related to class notice and administration . . . .

(Doc. 21-1 at 9.) At the Court's request, counsel for Plaintiff provided a schedule of hours spent through the October 31, 2018 (Doc. 28-2), and other documentation in connection with their representation in this matter (Doc. 28-1, 3-5). The attorneys' fee when calculated based on the hours spent by the three attorneys and paralegals (126.8) and billed at an hourly rate suggested by Plaintiffs' counsel totals $31,950. (Doc. 28-2 at 4.) The exceeds the $22,500 proposed.

*Bonett v. Education Debt Services* is analogous to the present case. In *Bonett*, also a case brought under FDCPA, plaintiffs proposed a class settlement (not including attorney fees) of $4,000 to the Class representative and approximately $22,000 to the Class. When divided equally among the 284 claimants, each claimant would receive $77.46. The Court approved $69,000 in attorney fees. *Bonnet*, 2003 WL 21658267, at *8.

> The Court is aware that the proposed attorneys' fees and reimbursement of expenses are
> significantly higher than the remaining Settlement Funds for the Class, but the Court is
> confident that the hourly rates and the total hours exhausted by the attorneys is a fair and
> reasonable representation of the work required in this particular class action. *See also*
> *Oslan* [*v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436,] 444 (E.D. Pa. 2002)
> ("Although the award of attorneys' fees exceeds the award to the Class, there is no rule of
> strict proportionality that counsel the court to decrease attorneys' fees in order to match
> successful judgments or settlement awards.").

*Id.*

The Court reserves judgment on final approval of costs and/or fees, but the Court has carefully reviewed these materials and, especially for the preliminary approval purposes, finds that the proposed fee is fair and reasonable under the circumstances.

## THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER

This factor is easily met as each class member, save the Class representative, will receive the same amount. An additional amount for the Class representative is justified given the representative's

involvement and work performed in the case.

## CONCLUSION REGARDING FAIRNESS, ADEQUACY AND REASONABLENESS

In conclusion, The Court finds that the proposed settlement is fair, adequate and reasonable under the circumstances.

## NOTICE

Rule 23(c)(2) requires the notice to include the following: 1) the nature of the action; 2) the definition of the class certified; 3) the class claims, issues or defenses; 4) that a class member may enter an appearance through an attorney if the member so desires; 5) that the court will exclude from the class any member who requests exclusion; 6) the time and manner requesting exclusion; and 7) the binding effect of a class judgment on members.

The Court has reviewed the proposed Notice (Doc. 53-2 at 25–32, the Settlement Agreement), and finds that the proposed Notice meets the appropriate standard under Rule 23(c)(2) and 23(e)(1). It fairly states the terms of the settlement in plain language without resort to legalisms and provides clear direction to class members on how to object and remove themselves from the settlement. It meets the specific requirements of both statutes.

The Court finds that the Class Notice gives fair notice to the Class of the terms of the settlement and the ways in which Class members can participate (or not) in the settlement, thus satisfying the requirements of Fed. R. Civ. P. 23, and of due process.

Schedule for Class Notice and Opt-Outs: Plaintiff and Defendant request that the Court set the following schedule for the proposed Agreement:

    a.      Class Notice (Exhibit 2 to the Declaration, Doc. 21-2) is to be mailed within 14 days of entry of the Preliminary Approval Order;

    b.      Class members shall have forty-five (45) days after mailing of the notice of the proposed settlement to complete and postmark a claim form, request to opt out of the

proposed settlement, or object to the proposed settlement;

       c.      A request for exclusion must be in writing and state information, including the name, address, and phone number of the person(s) or entity seeking exclusion. The request must be mailed to Defendant's Counsel at the address provided in the Class Notice and received by such date as set by the Court. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the Class Notice, or that is not received within the time specified shall be invalid and the person(s) serving such request shall remain a Class Member and shall be bound as a Class Member by the Settlement, if approved. Defendant has an obligation to forward any objections or requests for exclusions received to Class counsel within five (5) days of receipt.

       d.      A final hearing on the fairness and reasonableness of the Agreement and whether the final approval shall be given to it and the requests for fees and expenses by counsel for the Settlement Class will be held before this Court on a date at least ninety (90) days from the date Defendant mails notice pursuant to the Class Action Fairness Act; and

       e.      Class counsel shall file a fee petition within thirty (30) days after the initial mailing of notice to the Class members.

Defendant's insurer will pay the costs of such notice in addition to the amount they paid into the Settlement Fund. The notice describes the terms of the settlement; informs the class about their legal rights and options (including their right to exclude themselves from portions of the settlement or to object); informs the Class that Plaintiff will seek to recover costs, attorneys' fees, and a service award separate from the $7,000.00 Settlement Fund; and provides specific information regarding the date, time, and place of the final approval hearing.

This individualized Notice aims to maximize participation by listing a specific dollar figure the Class member may receive so as to encourage Class members to complete a claim form. The customization also minimizes confusion by ensuring that Class members learn the information that is most relevant to their particular circumstances. And the notice provides enough information about the settlement generally so that Class members understand the entire settlement and have the opportunity to lodge any objection they may have.

Once the settlement funds have been received by Class counsel, the funds will be distributed to the class members by mail at their last known address.

The detailed information in the proposed notice exceeds this bare minimum and fully complies with the requirements of Fed. R. Civ. P. 23(c)(2) and Rule 23(e)(1). It fairly states the terms of the settlement in plain language without resort to legalisms and provides clear direction on how to object and remove themselves from the settlement.

## METHOD OF NOTICE

The standard to be followed in measuring the adequacy of the method of notice is nicely summarized by Judge Vance in the case of *In re Pool Products Distribution Market Antitrust Litigation*:

> Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action. *Fidel v. Farley,* 534 F.3d 508, 513–14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Emps. Pension Fund,* 429 F.2d 935, 943–44 (10th Cir. 2005)). The notice must be "reasonably calculated, under all of the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeJulius,* 429 F.3d at 944 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Still, "the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1098 (5th Cir. 1977). Thus due process does not require *actual* notice to all class members who may be bound by the litigation. *See Fiedel,* 534 F.2d at 514.

310 F.R.D. at 317.

Here the proposed method of notification proposed is as follows:

Class Notice. Within fourteen (14) days of entry of the Preliminary Approval Order, Defendant shall cause actual notice, in the form of Exhibit 2 to the Declaration, to be sent to the last known addresses of the Settlement Class members, according to Defendant's records. Defendant shall distribute the notice via any form of U.S. Mail providing address forwarding. Each notice shall be sent with a request for forwarding addresses. In the event that a notice is returned as undeliverable and a forwarding address is provided, Defendant shall cause to be forwarded any such returned notice to the address provided within seven days of receipt. Defendant is not required to skip trace any letters that are returned as undeliverable. If final approval is granted, Defendant shall retain all documents and records generated during its administration of the settlement, including records of notice given to the Settlement Class, records of undelivered mail, claim forms and payments to Class Claimants for a period of at least six months following the issuance of an order dismissing this Lawsuit with prejudice and the expiration of all deadlines for appeal from such order.

The Court finds that this notice, opt-out, and objection process set out in the Agreement is fair, consistent with statutory requirements and amply protects the due process rights of absent class members to be informed of and participate in the settlement.

## CONCLUSION

It is therefore **ORDERED** that the motion (Doc. 21) is **GRANTED**, and the Court will enter an order in the form of Exhibit 3 to the Declaration, which (a) preliminarily approves the Agreement; (b) schedules a hearing for final approval of this Agreement; (c) approves Exhibit 2 to the Declaration as Notice to the Class to be directed to the last known address of the class members as shown on Defendant's records, (d) sets dates for Class members to opt-out, object, or return a claim form and (e) schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

Signed in Baton Rouge, Louisiana, on February 4, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**